UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MISTY DANIELLE BROWN,<br><br>    Plaintiff,<br><br>   v.<br><br>MEGAN BRENNAN,<br><br>    Defendant. | Case No. 19-cv-05797-JSC<br><br>**ORDER RE: MOTION TO DISMISS**<br><br>Re: Dkt. No. 52 |

Misty Danielle Brown, representing herself, sues her employer the Postmaster General of the United States Postal Service ("Defendant") and brings retaliation claims in her amended complaint under the Rehabilitation Act, 29 U.S.C. § 701; specifically, retaliation arising from a disability discrimination complaint Ms. Brown filed with the Equal Employment Opportunity Commission's ("EEOC's") Office of Federal Operations. (Dkt. No. 49.)[1] Before the Court is Defendant's motion to dismiss Ms. Brown's amended complaint pursuant to Federal Rule of Civil Procedure Rule 12(b)(6).[2] Defendant argues that Ms. Brown fails to allege facts sufficient to support a plausible inference that she suffered an adverse employment action. After careful consideration of the parties' briefing, and having had the benefit of oral argument on March 25, 2021, the Court GRANTS Defendant's motion. Ms. Brown fails to state claims for retaliation under the Rehabilitation Act.

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents. Additionally, on January 13, 2021 Ms. Brown filed an amended complaint and subsequent "edited amended complaint." (Dkt. Nos. 48 & 49.) The Court regards Ms. Brown's "edited amended complaint" as the operative complaint, and refers to it as the "amended complaint" or the "FAC."

[2] Both parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 6 & 25.)

# BACKGROUND

## I. Amended Complaint Allegations

Ms. Brown has been employed by Defendant since 1998. In May 2004, Ms. Brown suffered a knee injury while performing her duties. Following her injury, Ms. Brown underwent several surgeries and required "work restrictions per her doctors." (Dkt. No. 49 at 2 ¶ 6.) Ms. Brown was assigned to a "full-time modified limited duty Carrier Technician position" in September 2010 at Bayview Station in San Francisco, California, and was able to perform her job duties with reasonable accommodations. (*Id.* at 2 ¶¶ 7-8.) On January 12, 2013, Ms. Brown was demoted to an "unassigned modified full-time regular City Carrier" position; following her demotion, Ms. Brown contacted her regional EEOC office through her representative. (*Id.* at 2 ¶ 9.) Ms. Brown subsequently filed a complaint with the EEOC and was allegedly subject to retaliatory conduct that is the subject of another action in this District; that action is currently on appeal. (Dkt. No. 49 at 2-3 ¶ 9.) *See Brown v. Brennan*, No. 3:16-cv-06972-EDL ("*Brown I*").

The gravamen of Ms. Brown's amended complaint is that Defendant subjected her to the following retaliatory treatment for filing an appeal in August 2014 with the EEOC's Office of Federal Operations in connection with the above-referenced EEOC complaint: (1) on August 28, 2014, Defendant altered 8 hours of Ms. Brown's previously-approved sick leave to "leave without pay" and that Defendant still has yet to make "a proper adjustment to [this] designation" or provide a reasonable explanation—despite Ms. Brown's requests and in violation of its own policies—for the alteration; and (2) between September 27, 2014 and October 9, 2014, Defendant denied Ms. Brown timely notice of her daily and weekly work assignments. (Dkt. No. 49 at 3-4 ¶¶ 11, 17-18.) On October 20, 2014, Ms. Brown filed "an EEO charge" with the regional EEO office regarding this alleged discrimination. (*Id.* at 6 ¶ 23.) She then filed a formal EEOC complaint "on or about November 20, 2014." (*Id.*) Ms. Brown received a notice-of-right-to-sue letter from the EEOC on June 18, 2019. (*Id.*)

## II. Procedural History

Ms. Brown filed her complaint in September 2019, alleging two Title VII claims for retaliation for "engaging in prior EEO activity." (Dkt. No. 1 at 2 ¶ 4.) The Court granted

Plaintiff's application to proceed *in forma pauperis*, reviewed the complaint pursuant to 28 U.S.C. § 1915(e)(2), and directed the Clerk of Court to issue the summons. (Dkt. No. 7.) Defendant moved to dismiss thereafter. (Dkt. No. 20.) The Court granted Defendant's motion to dismiss, and gave Ms. Brown leave to amend her complaint. (Dkt. No. 37 at 10.) Ms. Brown filed the amended complaint on January 13, 2021. (Dkt. No. 49.) The motion is fully briefed, and the Court heard oral argument on March 25, 2021.

## DISCUSSION

Defendant moves to dismiss Ms. Brown's amended complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facial plausibility standard is not a "probability requirement" but mandates "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). Thus, a complaint "that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient, as is a complaint that "tenders naked assertion[s] devoid of further factual enhancement." *Id*. (internal quotation marks and citation omitted). When a plaintiff files a complaint without an attorney, as Ms. Brown does here, the Court must "construe the pleadings liberally . . . to afford the petitioner the benefit of any doubt." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (internal quotation marks and citation omitted).

### I.    The Amended Complaint Fails to State a Claim for Retaliation

Courts apply the same standard when analyzing retaliation claims under the Rehabilitation Act or Title VII of the Civil Rights Act of 1964 ("Title VII"). *See Scott v. Mabus*, 618 F. App'x 897, 901 (9th Cir. 2015) ("The same [Title VII] standards apply with respect to a retaliation claim based on the exercise of rights under the Rehabilitation Act.") (citing *Coons v. Sec'y of U.S. Dep't of Treasury*, 383 F.3d 879, 887 (9th Cir.2004)). To state a claim for retaliation under this standard, a plaintiff must allege that: (1) "she engaged in a protected activity"; (2) her employer "subjected her to an adverse employment action"; and (3) there is a causal link "between the

3

protected activity and the adverse action." *Manatt v. Bank of Am., NA*, 339 F.3d 792, 800 (9th Cir. 2003). The amended complaint brings a claim for retaliation under the Rehabilitation Act based on 2 instances of alleged retaliatory treatment: Defendant altered 8 hours of prior-approved dependent sick leave as "leave without pay" in August 2014 and failed to provide a reasonable explanation for—or follow its own procedures to remedy—this alteration; and (2) between September 27, 2014 and October 9, 2014, Defendant failed to provide Ms. Brown with timely notice of her work schedule and assignments. (Dkt. No. 49 at 6 ¶ 29.) As discussed below, the amended complaint fails to adequately plead a Rehabilitation Act retaliation claim as to both instances of alleged retaliation.

### A. Protected Activity

Defendant asserts that Ms. Brown's claims fail in part because she has not alleged the first element, that she engaged in protected activity, required for her retaliation claim. (Dkt. No. 52 at 15.) The Court disagrees. Ms. Brown alleges that Defendant "violated the Rehabilitation Act" by retaliating against her "[i]mmediately after [she] fil[ed] the EEO appeal[.]" (Dkt. No. 49 at 6 ¶¶ 26, 29.) The complaint specifies that the retaliation took place after Ms. Brown filed "an appeal of a charge of disability discrimination and retaliation [with] the [EEO's] Office of Federal Operations" in connection with the complaint and conduct at issue in *Brown I*. (*Id.* at 6 ¶ 27.)

The Court previously determined that Ms. Brown failed to "plead the underlying statutory basis for the protected activity at issue in her retaliation claim[.]" (Dkt. No. 37 at 6.) The amended complaint clarifies that the underlying statutory basis for the protected activity at issue in her retaliation claim (the August 2014 appeal to the EEOC) is disability discrimination brought under the Rehabilitation Act. (Dkt. Nos. 49 at 6 ¶ 27, 37 at 6.) Because Ms. Brown's retaliation claim is brought under the Rehabilitation Act, and that is the same statute under which she alleged the protected activity, she has sufficiently alleged that she engaged in protected activity. *See Passatino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 506 (9th Cir. 2000); *see also McCarthy v. Brennan*, No. 15-cv-03308-JSC, 2016 WL 946099, at *12 (N.D. Cal. Mar. 14, 2016) ("[t]here is no doubt that filing grievances and pursuing constitutional and statutory remedies are protected activities") (internal quotation marks and citations omitted).

4

### B. Adverse Employment Actions

To satisfy the second element of a retaliation claim under Title VII, and therefore the second element of a retaliation claim under the Rehabilitation Act, a plaintiff must ultimately show "that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks and citation omitted); *see also Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000) ("[W]e have held that only non-trivial employment actions that would deter reasonable employees complaining about Title VII violations will constitute actionable retaliation."). Examples of adverse employment actions include: "actions materially affecting compensation, terms, conditions, or privileges of employment," and termination. *McCarthy*, 2016 WL 946099, at *13 (internal quotation marks, alterations, and citation omitted). The Court addresses each alleged adverse employment action in turn.

### 1. Alteration of Eight Hours of Approved Sick Leave

Ms. Brown alleges that Defendant manually altered 8 approved hours of sick leave and changed this time to "leave without pay," thereby "deleting" 8 hours of paid sick leave. (Dkt. No. 49 at 3 ¶ 11.) She further alleges that, upon discovering this, she requested "emergency salary pay" pursuant to Defendant's "Employee Emergency Salary Issued Process." (*Id.* at 3 ¶ 12.) Under this process, when an employee "whose pay is decreased by 8 or more hours requests an emergency salary," her manager or supervisor must complete an "emergency salary authorization" in addition to a "payroll adjustment." (Dkt. No. 49 at 3 ¶ 12.) The amended complaint alleges and Ms. Brown contended at oral argument that Kiwanni Warren, Ms. Brown's supervisor, only offered Ms. Brown a payroll adjustment—Ms. Warren did not complete the emergency salary authorization. (Dkt. No. 49 at 3-4 ¶ 13.) Ms. Brown alleges that Ms. Warren's conduct "would have resulted in delayed pay for two to four weeks and could have placed [her] in a higher tax bracket." (*Id.* at 4 ¶ 15.)

The amended complaint does not plausibly allege a materially adverse employment action that "well might have dissuaded a reasonable [person] from making or supporting a charge of

5

discrimination." *See White*, 548 U.S. at 68.  First, an employment action must be "sufficiently final to constitute an adverse employment action." *Brooks*, 229 F.3d at 929-930 (concluding that performance evaluation "was not an adverse employment action because it was subject to modification by the [defendant]").  Ms. Brown alleges that Defendant "still has yet to make a proper adjustment to [her] improper [time] designation," and argues in her opposition that she has not been "properly adjusted" for her sick leave wages.  (Dkt. Nos. 49 at 4 ¶ 17, 66 at 8.)  However, drawing all reasonable inferences in Ms. Brown's favor, Ms. Brown herself alleges that the action was not final; instead, she brought it to her supervisor's attention and Defendant attempted to correct the problem by offering "a pay adjustment."  *See Brooks*, 229 F.3d at 929-930 (concluding that action was not final for Title VII retaliation purposes where defendant accommodated plaintiff's preferences after plaintiff complained about the challenged conduct); *see also Uche-Uwakwe v. Shinseki*, 972 F. Supp. 2d 1159, 1181 (C.D. Cal. 2013) (finding that improper designation of the plaintiff's time as unpaid and unapproved leave did not constitute an adverse employment action because "it was temporary and corrected shortly after [the plaintiff] complained") (citing *Brooks*, 229 F.3d at 930).

Second, as the Court discussed in its previous Order, where the action is corrected it cannot serve as the basis for a retaliation claim.  *See Kortan v. California Youth Auth.*, 217 F.3d 1104, 1113 (9th Cir. 2000).  As alleged here, Defendant attempted to correct the action.  Moreover, the only substantive harm alleged by Defendant's action is a two to four-week delay in payment of eight hours of wages.  (Dkt. No. 49 at 4 ¶ 15.)  That delay does not plausibly rise to the level of an adverse employment action that would deter a reasonable employee from pursuing a charge of discrimination.  In *Kortan*, for example, the defendant gave the plaintiff an undeserved negative performance evaluation; however, the evaluation, when challenged, was corrected.  The Ninth Circuit held that the negative performance evaluation therefore did not rise to level of an adverse employment action as a matter of law:

> Kortan was not demoted, was not stripped of work responsibilities, was not handed different or more burdensome work responsibilities, was not fired or suspended, was not denied any raises, and was not reduced in salary or in any other benefit. Thus, Kortan has not shown that her evaluation

6

was discriminatory or retaliatory, or was such an "intolerable" act that it would force an employee to quit.

*Kortan*, 217 F.3d at 1113. The same is true of Ms. Brown's allegations here. The alleged delay in paying her for eight hours of work does not plausibly rise to the level of an adverse employment action that would deter a reasonable employee from pursuing a charge of discrimination.

Ms. Brown alleges that interference with her paychecks has caused her extreme economic anxiety, and states in her opposition that Defendant's alteration of her wages is still affecting her. (Dkt. Nos. 49 at 6 ¶ 22, 66 at 8.) The Court recognizes this hardship. However, the action that produced that hardship was not final, and was instead correctable; indeed, Plaintiff alleges that Defendant offered a correction in the form of a pay adjustment. Thus, it does not constitute an adverse employment action for purposes of a Rehabilitation Act retaliation claim.

### 2. Failure to Provide Timely Notice of Work Assignments

Ms. Brown's retaliation claim also alleges that Defendant failed to provide her with timely notice of her work assignments between September 27, 2014 and October 9, 2014. (Dkt. No. 49 at 4 ¶ 18.) Defendant asserts that this employment action fails for the same reasons as discussed above; specifically, that it was "neither permanent nor final[,]" "remedied . . . shortly after [Ms. Brown] complained[,]" and that it is a trivial, non-material action. (Dkt. No. 52 at 18-19.) The Court agrees. Ms. Brown alleges that Defendant failed to provide her with "timely notice" of her work assignments from September 27, 2014 through October 9, 2014. (Dkt. No. 49 at 4-5 ¶ 18.) Ms. Brown states in her opposition that she had a fixed work schedule, and the gravamen of her claims is that Defendant failed to notify her of her work assignments set within that fixed schedule from September 27, 2014 through October 9, 2014. (Dkt. Nos. 49 at 6-7 ¶¶ 29, 36, 66 at 9.) Ms. Brown does not allege that Defendant's failure to provide timely notice of daily and weekly assignments during this limited time period constituted a material change in the terms and conditions of her employment. *See Dupree v. Apple, Inc.*, No. 16-CV-00289-LHK, 2017 WL 2617978, at *11 (N.D. Cal. June 16, 2017), *aff'd*, 715 F. App'x 798 (9th Cir. 2018) (finding that employee's being "marked tardy" for a shift was not an adverse employment action because the plaintiff did not allege that being marked tardy resulted in a loss of pay or any changes to his work

schedule) (citing *Chuang v. Univ. of California Davis, Bd. of Trustees*, 225 F.3d 1115, 1126 (9th Cir. 2000)); *see also Bogner v. R&B Sys., Inc.*, No. CV-10-193-JLQ, 2011 WL 1832750, at *5 (E.D. Wash. May 12, 2011) (determining that a change in shift time was not an adverse employment action because "the total time of the shift remained the same and there [was] no evidence the change exploited a unique vulnerability of [the] plaintiff").

While Ms. Brown alleges that from September 27, 2014 to October 9, 2014 she was assigned what she believed to be less desirable routes, the test of an adverse employment action is whether the challenged conduct would dissuade the particular plaintiff from pursuing a charge of discrimination; it is an objective test. *See White*, 548 U.S. at 68-69 (noting that an objective standard for determining whether an employer's conduct would deter a reasonable employee from engaging in protected activity "avoids the uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective feelings"). For the reasons set forth above, as alleged the facts regarding Defendant's failure to provide Ms. Brown with notice of work assignments during this limited period do not satisfy that objective test.

## II. The Amended Complaint Fails to State a Claim for "Hostile Work Environment"

Ms. Brown brings a second claim for "Retaliation – Hostile Work Environment" under the Rehabilitation Act. (Dkt. No. 49 at 7 ¶¶ 32-38.) She alleges that Defendant's retaliatory actions "materially altered [the] terms, conditions and benefits of her employment [and] were sufficient to and created an abusive working environment." (*Id.* at 7 ¶ 37.) Defendant argues that Ms. Brown's second claim is not a "new claim for 'hostile work environment,'" but is instead a retaliation claim where Ms. Brown alleges the necessary "adverse action was a 'hostile work environment' resulting from the two instances of allegedly retaliatory conduct." (Dkt. No. 67 at 15.) Even construing Ms. Brown's second claim as one for hostile work environment, rather than one for retaliation, she has failed to plead facts sufficient to state a plausible claim for relief.

While the Ninth Circuit has not yet officially recognized that a "hostile work environment claim exists in the context of the Rehabilitation Act," *see Williams v. Modly*, 796 F. App'x 378, 381 (9th Cir. 2020), assuming the claim exists it relies on "a series of separate acts that collectively are so severe and offensive that they alter the conditions of plaintiff's employment[,]"

8

*id.* (citing *Nat'l Ry. Passenger Corp. v. Morgan,* 536 U.S. 101, 117 (2002)). Construing Ms. Brown's claim as a hostile work environment rather than a second retaliation claim, she has failed to plead facts sufficient to show that Defendant's actions constitute a series so "severe and offensive that they alter[ed] the conditions of [her] employment." *Williams*, 796 F. App'x at 381. Ms. Brown alleges that Defendant's alteration of her time in August 2014 and the failure to notify her regarding her work assignments from September 27, 2014 to October 9, 2014 created an "abusive working environment." (Dkt. No. 49 at 7 ¶¶ 36-37.) However, isolated incidents such as these that are not serious employment actions are insufficient to make a workplace hostile and alter the conditions of a plaintiff's employment. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998); *Candelore v. Clark Cty. Sanitation Dist.*, 975 F.2d 588, 590 (9th Cir. 1992) (per curiam).

\* \* \*

Accordingly, the Court grants Defendant's motion to dismiss. On February 7, 2020 the Court granted Defendant's motion to dismiss the original complaint for the same reasons the Court grants the motion to dismiss the amended complaint; namely, that the two challenged acts of retaliation do not amount to adverse employment actions as a matter of law. (Dkt. No. 37.) The dismissal order gave Plaintiff 21 days to file an amended complaint. (*Id.*). Thereafter Plaintiff sought and was granted four extensions of time to file her amended complaint. (Dkt. Nos. 40, 42, 44, 46.) She finally filed the amended complaint on January 13, 2021. As explained above, the amended complaint does not cure the deficiencies of the original complaint, and it is apparent that they cannot be cured with further amendment. The dismissal is therefore without leave to amend.

## CONCLUSION

For the reasons stated above, the Court GRANTS Defendant's motion to dismiss without leave to amend. A separate judgment will be entered.

This Order disposes of Dkt. No. 52.

**IT IS SO ORDERED.**

//

//

Dated: March 26, 2021

*Jacqueline Scott Corley*
JACQUELINE SCOTT CORLEY
United States Magistrate Judge